**AVCO CORPORATION, Plaintiff,**

v.

**LOCAL UNION #787 OF the INTERNATIONAL UNION et al., Defendants.**

**Civ. A. Nos. 71-78, 71-80.**

United States District Court,
M. D. Pennsylvania.

March 17, 1971.

Supplemental Opinion March 24, 1971.

O. William Vanderlin, Charles J. Mc-Kelvey, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for plaintiff.

Sydney A. Simon, Williamsport, Pa., for defendants.

## OPINION

MUIR, District Judge.

Avco Corporation filed a complaint in equity in the Court of Common Pleas of Lycoming County on February 26, 1971, seeking an injunction against the defendant labor unions and certain of its employees. On March 2, 1971, the action was removed to this court by the defendants. Avco moved immediately to remand. Alternatively, a preliminary injunction is sought enjoining the defendants from engaging in any action which would discourage employees from accepting any overtime assignment.

Avco Corporation is a Delaware corporation which manufactures airplane engines and related products at its Lycoming Division, in Williamsport, Pennsylvania. The defendant unions represent approximately 900 employees at the plant. The parties have executed a collective bargaining agreement covering these employees. On February 21, 1971, defendant local union adopted a resolution forbidding overtime work by its members, plaintiff's employees, until all employees laid off by Avco have been returned to work. The plaintiff contends that the unions agreed in Article XV of the bargaining agreement that their members would work overtime and thus the present refusal is a partial strike in breach of the no-strike provision (Article XVII) in the contract. The unions take the position that overtime work is voluntary and thus their action is not in violation of the labor agreement.

At the outset we noted that plaintiff has moved to remand this action to the Court of Common Pleas of Lycoming County. It is its position that removal in the instant case frustrates the will and intent of Congress as embodied in § 301, LMRA, 29 U.S.C. § 185(a), wherein the jurisdiction of the State courts was preserved, and that removal was not necessary to protect the federal rights of the defendant unions.

29 U.S.C. § 185(a) provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

In Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968), the Court said:

"An action arising under § 301 is controlled by federal substantive law even though it is brought in a state court. [Citations omitted] Removal is but one aspect of the 'primacy of the federal judiciary in deciding questions of federal law.' [Citation omitted]

■ It is thus clear that the claim under this collective bargaining agreement is one arising under the 'laws of the United States' within the meaning

of the removal Statute. 28 U.S.C. § 1441(b). It seems likewise clear that this suit is within the 'original jurisdiction' of the District Court within the meaning of 28 U.S.C. §§ 1441(a) and (b)."

Accordingly, the defendant unions had a clear statutory right to remove this action to this Court. The motion to remand will therefore be denied.

Turning to the question of whether or not a preliminary injunction should be granted, we are guided by the recent Supreme Court decision in Boys' Market, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In this case the Court adopted the principles previously set forth in the dissenting opinion of Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

As set forth in the dissent in *Sinclair* and reiterated in *Boys' Market*, a "District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act.

When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunction order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." 370 U.S. at 228, 82 S.Ct. at 1346. (Emphasis is the Supreme Court's).

The initial question is therefore whether or not both parties are contractually bound to arbitrate the subject matter of the present dispute.

Article III of the existing collective bargaining agreement sets forth the arbitration and grievance procedure.[1]

I. ARTICLE III
GRIEVANCE PROCEDURE
*Section 1.* Grievances are defined as any alleged violation of the terms of this Agreement or differences of opinion as to its interpretation or application. Subject to the provisions of Section 7 of this Article III, grievances as defined herein, shall be settled promptly in the manner hereinafter set forth.
*Step 1.* A grievance, except one which is of a general or policy nature, must first be taken up orally with the Department Foreman by the Department Steward and the employee asserting the grievance. However, any individual employee or group of employees shall have the right to present grievances to the Company at any time. In the event of a settlement, a Union representative shall have the right to be present.
*Step 2.* If no satisfactory settlement of the grievance is reached in Step 1, the Steward will reduce it to writing in duplicate on a grievance form provided by the Company, and present it to the Department Foreman. No later than two

working days following that on which the grievance was presented to the foreman, a meeting shall be held for the purpose of a full investigation of all facts concerned with the grievance. Those present at this meeting may include the Labor Relations Manager (or his designated representative), the Department Head, the foreman, the aggrieved employee or employees, the area Steward, the Shop Chairman (or his designated representative), the area Committeeman, and any such other individual or individuals who have knowledge or information which would be pertinent to the discussion and settlement of the grievance. Within two working days following the conclusion of this meeting, the Department Head will answer the grievance and return it to the area Committeeman. Failure to answer the grievance within the time limitation specified will automatically advance it to the next step.
*Step 3.* If no satisfactory settlement of the grievance is reached in Step 2 above, the grievance shall be presented by the Shop Committee to the Labor Rela-

After a careful examination of this procedure the court is of the opinion that both parties are not contractually bound to arbitrate the present dispute. In Stroehmann Bros. Co. v. Local 427 of Confectionary Workers Int'l Union, 315 F.Supp. 647 (M.D.Pa. 1970), Judge Herman of this court was faced with a remarkably similar grievance procedure. He ruled that since the procedure there was employee-oriented and since only the union had the right to institute action under the grievance provisions of the agreement, no injunction could be granted as the agreement was not specifically enforceable against the union.

An order will be entered denying the preliminary injunction.

This Opinion shall constitute the Court's findings of fact and conclusions of law. Rule 52 Fed.R.Civ.P.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following supplemental:

### FINDINGS OF FACT

1. Avco Corporation, Plaintiff, is a Delaware corporation. Its Lycoming Division operates a manufacturing plant and other facilities at Williamsport, Lycoming County, Pennsylvania.

---

tions Manager or his designated representative. The Labor Relations Manager or his designated representative shall meet with the Shop Committee once weekly at a designated time for the purpose of settling any grievances that may be referred to this step. The International Representative of the Union may participate in these meetings. The Labor Relations Manager or his designated representative shall give a written disposition to all grievances presented at this meeting within five (5) working days after this meeting. Failure to do so will automatically move the grievance to the next step.

*Step 4.* In the event any grievance referred to the Third Step meeting of the grievance procedure as provided herein, remains unsettled following discussion of the grievance in that meeting, it may be formally referred, in writing, by the Union to the American Arbitration Association for the purpose of arbitrating the unsettled matter. In order to be valid, such formal written notification to the American Arbitration Association must be made within twenty-one (21) calendar days from the date a written answer is given following the third step grievance meeting and a copy of such notification shall be sent to the Company. In the event such formal referral is not made within this twenty-one (21) calendar day limit, the grievance shall be considered settled on the basis of the last decision and not subject to further appeal. A grievance properly submitted to the American Arbitration Association shall be considered by an arbitrator who shall be selected, and arbitration shall proceed, under the Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association.

However, if the American Arbitration Association is unable to appoint the arbitrator on the basis of the preference of the parties as indicated on the first list of arbitrators submitted to the parties in accordance with its Rules, a second list of three (3) arbitrators, none of whom shall have appeared on the first list, shall be submitted to the parties for their consideration. The Company and the Union may strike one name from the second list. In the event either party fails to return the second list in the prescribed manner and time the American Arbitration Association may appoint the arbitrator from the list of the complying party.

The Arbitrator when duly appointed, shall proceed to consider the disputed grievance without delay, and shall render his decision promptly following the conclusion of his taking evidence in the matter. The decision of the arbitrator shall be final and binding upon the parties. The jurisdiction of the arbitrator shall be limited to determining questions involving the interpretation or application of the terms of this Agreement, or any agreement made supplementary hereto. He shall have no authority to add to or subtract from, or to change, any of the terms of this Agreement, including the existing wage rates, as set forth in Exhibit "A", "B", and "C", production standards, job classifications, or operations, nor shall more than one (1) grievance be arbitrated by any one arbitrator. The cost of the expense of the American Arbitration Association proceedings, including the compensation paid the arbitrator, shall be borne by the party losing the case. If the decision is not clear cut as to which party won or lost said case, the arbitrator shall decide which party shall be assessed the cost.

2. Local 787 UAW (hereinafter referred to as the "Local Union") is an unincorporated association with its principal office at 656 Lloyd Street, Williamsport, Lycoming County, Pennsylvania. Said Local Union is affiliated with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW).

3. The Defendant, International Union (UAW) (hereinafter referred to as "International") is an unincorporated association with its principal office in Detroit, Michigan and an office at 656 Lloyd Street, Williamsport, Lycoming County, Pennsylvania.

4. The other parties Defendant are individuals sued in their capacities as stated in the caption and reside in this judicial district.

5. Plantiff owns and operates a plant at Oliver Street, Williamsport, Pennsylvania for the development, production and manufacture of aircraft engines, components, accessories and related items for use on fixed wing and helicopter aircraft under and pursuant to contracts with commercial organizations located in Pennsylvania, Kansas, Texas, California, Florida and other places throughout these United States of America and in Europe, Asia and South America. It also has contracts with various agencies of the United States Government, including the Department of Defense, through which Plaintiff's Williamsport production is utilized in the National Defense effort by American Armed Forces stationed in the United States and abroad and by those engaged in the Southeast Asian conflict.

6. Defendant International and Local Union are the sole collective bargaining representatives for all production and maintenance employees (approximately 900) of Plaintiff at the Oliver Street plant and airport facilities referred to above. Plaintiff and Defendant International and Defendant Local Union are parties to a collective bargaining agreement (hereinafter referred to as Labor Agreement) dated May 4, 1968, (Joint Exhibit No. 2), effective from May 4, 1968 to May 7, 1971.

7. The collective bargaining agreement provides in pertinent part for: Overtime work (*Hours of Work and Overtime*, Article XV, pp. 55–57); recall from layoff (seniority) pp. 16–24; a grievance procedure culminating under certain circumstances in final and binding arbitration on both parties (*Grievance Procedure*, Article III, pp. 9–13); and for a no-strike, no lock-out provision (*Production Interference*, Article XVII, pp. 58–59.) The language of the Labor Agreement concerning these provisions follows:

a. Hours of Work and Overtime.

The work week shall begin at the start of each shift commencing work after 10:59 p. m. Sunday. (Schedule of regular working hours shall be posted).

The regular hours for the shifts shall be 7:00 a. m. to 3:30 p. m. and 3:30 p. m. to Midnight. In the case of three shift operations, the regular hours shall be 7:00 a. m. to 3:00 p. m., 3:00 p. m. to 11:00 p. m. and 11:00 p. m to 7:00 a. m.

The regular work week shall consist of five (5) consecutive eight-hour days, Monday to Friday, inclusive, except that this shall not apply to Power House.

This section 1 shall not be construed as a guarantee of hours of work per day or per week.

Employees on regular shifts shall be granted a thirty (30) minute lunch period. Employees on three-shift operations shall be granted a twenty (20) minute lunch period in accordance with the Opinion and Award in American Arbitration Association proceeding No. L–8565 PHI–L–286–51.

Except as to Power House employees, time and one-half (1½) shall be paid for all work performed on Saturday and double (2) time shall be paid for all work performed on Sunday.

Power House employees shall have two (2) consecutive "off-duty" days

in each week, and time and one-half (1½) shall be paid for work performed on the first scheduled "off duty", and double (2) time shall be paid for work performed on the second scheduled "off-duty" day.

Time and one-half (1½) shall be paid to hourly rate employees for all hours worked in excess of eight (8) hours in any one day. A day shall consist of twenty-four (24) consecutive hours starting at the beginning of the regularly scheduled shift in which the employee starts to work, except that this determination shall not carry over from one regular work week into the next regular work week.

No employee will be paid overtime twice for the same hours and no day shift employee shall be paid overtime and night premium for the same hours.

The overtime provisions of the foregoing Paragraph (g) shall not apply when an employee, at his request or at the request of the Company, is transferred from one shift to another, provided such shifts are not consecutive.

An employee called in for duty off schedule shall be credited with no less than four (4) hours' time at his regular straight time base rate, provided less than four (4) hours are earned. In the event that more than the equivalent of four (4) hours straight time pay has been earned by the employee at applicable overtime rates, the guaranteed payment shall not be paid in addition to the employee's earnings.

The Company agrees that it will endeavor, to the best of its ability taking into consideration production requirements, to equalize overtime among its employees by departments.

Records of overtime work shall be kept in each department, and shall be posted therein. Where an employee does not work overtime offered with adequate notice, such hours will be counted for equal distribution. When an employee works overtime in another department, such overtime work shall be recorded as overtime work in his own department. Overtime work shall be assigned to the employee in the department having the least overtime recorded to his credit, provided that he is capable of performing the work required. When overtime is to be scheduled in a department, the department Foreman and the Steward or Committeeman will discuss the distribution of such overtime in advance. For the purpose of administering the provisions of this paragraph (j), the recording of overtime shall commence as of the effective date of this Agreement.

b. Grievance Procedure.

Section 1. Grievances are defined as any alleged violation of the terms of this Agreement or differences of opinion as to its interpretation or application. Subject to the provisions of Section 7 of this Article III, grievances as defined herein, shall be settled promptly in the manner hereinafter set forth.

Step 1. A grievance, except one which is of a general or policy nature, must first be taken up orally with the Department Foreman by the Department Steward and the employee asserting the grievance. However, any individual employee or group of employees shall have the right to present grievances to the Company at any time. In the event of a settlement, a Union representative shall have the right to be present.

Step 2. If no satisfactory settlement of the grievance is reached in Step 1, the Steward will reduce it to writing in duplicate on a grievance form provided by the Company, and present it to the Department Foreman. No later than two working days following that on which the grievance was presented to the foreman, a meeting shall be held for the purpose of a full investigation of all facts concerned with the grievance. Those present at this meeting may include the Labor Relations Manager (or his designated representative), the Department Head, the fore-

man, the aggrieved employee or employees, the area Steward, the Shop Chairman (or his designated representative), the area Committeeman, and any such other individual or individuals who have knowledge or information which would be pertinent to the discussion and settlement of the grievance. Within two working days following the conclusion of this meeting, the Department Head will answer the grievance and return it to the area Committeeman. Failure to answer the grievance within the time limitation specified will automatically advance it to the next step.

Step 3. If no satisfactory settlement of the grievance is reached in Step 2 above, the grievance shall be presented by the Shop Committee to the Labor Relations Manager or his designated representative. The Labor Relations Manager or his designated representative shall meet with the Shop Committee once weekly at a designated time for the purpose of settling any grievances that may be referred to this step. The International Representative of the Union may participate in these meetings. The Labor Relations Manager or his designated representative shall give a written disposition to all grievances presented at this meeting within five (5) working days after this meeting. Failure to do so will automatically move the grievance to the next step.

Step 4. In the event any grievance referred to the Third Step meeting of the grievance procedure as provided herein, remains unsettled following discussion of the grievance in that meeting, it may be formally referred, in writing, by the Union to the American Arbitration Association for the purpose of arbitrating the unsettled matter. In order to be valid, such formal written notification to the American Arbitration Association must be made within twenty-one (21) calendar days from the date a written answer is given following the third step grievance meeting and a copy of such notification shall be sent to the Company. In the event such formal referral is not made within this twenty-one (21) calendar day limit, the grievance shall be considered settled on the basis of the last decision and not subject to further appeal. A grievance properly submitted to the American Arbitration Association shall be considered by an arbitrator who shall be selected, and arbitration shall proceed, under the Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association.

However, if the American Arbitration Association is unable to appoint the arbitrator on the basis of the preference of the parties as indicated on the first list of arbitrators submitted to the parties in accordance with its Rules, a second list of three (3) arbitrators, none of whom shall have appeared on the first list, shall be submitted to the parties for their consideration. The Company and the Union may strike one name from the second list. In the event either party fails to return the second list in the prescribed manner and time the American Arbitration Association may appoint the arbitrator from the list of the complying party.

The Arbitrator when duly appointed, shall proceed to consider the disputed grievance without delay, and shall render his decision promptly following the conclusion of his taking evidence in the matter. The decision of the arbitrator shall be final and binding upon the parties. The jurisdiction of the arbitrator shall be limited to determining questions involving the interpretation or application of the terms of this Agreement, or any agreement made supplementary hereto. He shall have no authority to add to or subtract from, or to change, any of the terms of this Agreement, including the existing wage rates, as set forth in Exhibit "A", "B", and "C", production standards, job classifications, or operations, nor shall more than one (1) grievance be arbitrated by any one ar-

bitrator. The cost of the expense of the American Arbitration Association proceedings, including the compensation paid the arbitrator, shall be borne by the party losing the case. If the decision is not clear cut as to which party won or lost said case, the arbitrator shall decide which party shall be assessed the cost.

c. Production Interference.

Section 1. The Union agrees that there shall be no strikes, walkouts, sitdowns, production retardings, or other similar interruptions of, or interferences with, work during the term of this agreement for any reason, except that the Union reserves the right to strike in the event that the parties fail to reach an agreement with respect to disputed job standards or rates to be paid on new operations following the exhaustion of the Third Step of the Grievance Procedure without regard to whether the grievance so filed and processed was a general, specific or policy grievance.

8. Plaintiff is a custom job shop. Because of the specialized nature of its production operations and the exigencies of production requirements, overtime work by Plaintiff's production and maintenance employees is of great importance to Plaintiff from time to time, even when the company is operating at full employment. Said overtime work may consist of work in excess of eight (8) hours in one day or in excess of forty (40) hours in one week as defined in Article XV of the Labor Agreement, above. Prior to February 21, 1971, Plaintiff had been able to fulfill its needs for overtime work by bargaining unit employees.

9. On February 21, 1971, the Local Union passed a resolution forbidding overtime work by its members, who are employees of Plaintiff, until such time as all laid off employees have been returned to work. Plaintiff has approximately 1500 employees who have been laid off because of adverse economic conditions in the Aerospace industry. (The latter International Region approved the Labor Agreement of the parties. [Joint Exhibit No. 2, p. 63].)

10. On February 22, 1971, the Local Union through Donald Eck, Chairman of the Grievance Committee of the Local, advised the company Director of Personnel of the resolution.

11. From February 21, 1971, up to and including the dates of hearing (March 5, 1971), in this matter, all members of the Defendant Unions, who are employed by Plaintiff, have refused to work overtime (with one or two exceptions of several hours each). During the time in question, Plaintiff made approximately 215 requests for overtime work of many different employees, who are members of Defendant Unions, all of which requests were rejected.

CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of this proceeding under § 301 of the Labor Management Relations Act 29 U.S.C. § 185(a) (hereafter referred to as "Act").

2. Avco Corporation is an employer engaged in commerce within the meaning of § 2(6) and (7) of the Act.

3. Defendant Unions are labor organizations within the meaning of the Act. Individual Defendants are all resident within this judicial district and are officers and agents of either or both Unions.

4. Plaintiff and Defendant Unions have executed a collective bargaining agreement effective May 4, 1968 to May 7, 1971 which contains provisions governing overtime work and recall from layoff. Said agreement contains a nostrike provision and a grievance procedure under certain circumstances culminating in final and binding arbitration.

5. Since February 21, 1971, Defendant Unions have refused to permit its members who are Plaintiff's employees to work overtime as provided in the Labor Agreement.

6. The union is not contractually bound to arbitrate the current grievance.

7. An injunction is not appropriate.