**TELEDYNE WISCONSIN MOTOR, a Division of Teledyne Industries Inc., a California Corporation, Plaintiff-Appellant,**

**v.**

**LOCAL 283, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et al., Defendants-Appellees.**

**No. 75–1186.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1975.

Decided Jan. 26, 1976.

Gary J. Okey, Herbert P. Wiedemann, Milwaukee, Wis., for plaintiff-appellant.

M. Jay Whitman, John A. Fillion, Detroit, Mich., George F. Graf, Milwaukee, Wis., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, SWYGERT, Circuit Judge, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

This action was brought by Teledyne Wisconsin Motor (hereinafter "Teledyne") to enjoin an alleged concerted refusal of certain of its employees to work overtime hours and to require that defendants resolve any dispute concerning overtime in the manner set forth in the grievance and arbitration provisions of the collective bargaining agreement between Teledyne and the defendant union. After due consideration of the pleadings and briefs and hearing oral argument, the District Court found and concluded, *inter alia,* that the provisions of the Norris-LaGuardia Act were controlling, that no exception thereto had been established by Teledyne, that it had no jurisdiction to grant the injunctive relief requested, and that it should deny the plea for compelled arbitration. Accordingly, the case was ordered dismissed. Teledyne appealed. We affirm the dismissal.

On appeal the parties agree that the relevant facts of the case are as set forth in the District Court's memorandum opinion. See 386 F.Supp. 1231 at 1232–1234. We adopt the following summary by the District Court of the factual background.

---

\* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

This suit is brought by an employer, Teledyne Wisconsin Motor (hereinafter "Teledyne"), in an attempt to resolve a labor dispute concerning a refusal of certain of its production employees to work overtime hours. The employees at issue are members of Local 283, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter "the union"); the union is a party defendant in this action.

This Court's jurisdiction over the subject matter of the controversy is alleged to exist by virtue of the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; in view of the provisions of § 4(a) of the Norris-LaGuardia Act, 29 U.S.C. § 104(a), whether the Court has jurisdiction to provide the injunctive relief requested is one of the material questions of law that have been argued by the parties.

\* \* \* \* \* \*

This lawsuit represents but one aspect of what appears to be a continuing struggle between the union and Teledyne to establish the nature of the arbitration procedures that are required under the collective bargaining agreements that have come into effect between them. The material facts giving rise to this particular suit are relatively few in number and are not substantially disputed.

The most recent collective bargaining agreement (hereinafter "the agreement") was executed in May of 1974 and has been in effect between the parties at all times material to this action; it includes some provisions for arbitration of disputes that arise between the parties, but it does not contain a "no-strike" clause to prohibit the union from engaging in work stoppage to press for concessions from the employer.

The plaintiff Teledyne is a manufacturer in the business of producing piston engines and employs members of the union to fill its requirements for both maintenance and production labor. For some time prior to November, 1974, Teledyne had been in the practice of regularly scheduling overtime hours for the employees represented by the union and had come to rely upon such overtime work in estimating production capacities; commitments for the sale and delivery of their product are based on an assumption that overtime help will be available from production and maintenance personnel.

The union has traditionally recognized this need for overtime assistance and maintains no general policy in opposition to either regularly scheduled or sporadic overtime work. The May, 1974, agreement states at paragraph 20.E.:

> "E. It shall not be compulsory for any individual employee to work overtime. However, this provision may not be used by any department or group of employees to prevent the scheduling of a work week beyond forty (40) hours. Employees who are scheduled to work overtime and who chose [sic] not to work shall, whenever reasonably possible, advise their Foreman in advance of their not working."

The union takes a different position in regard to overtime labor by other than maintenance personnel when some of its members have been placed on layoff status by the employer. In this circumstance, other provisions of the agreement become relevant. At paragraph 46.A. the agreement states that:

> "46. A. No employee shall regularly work more than forty (40) hours per week before all employees on the seniority list are re-employed. Maintenance work that cannot be performed during normal working hours, may be done · on overtime hours."

It is this clause that has engendered the dispute here at issue; its provisions have come into question because, due to a severe reduction in the number of orders for its engines, Teledyne has been in the process of reducing its

production output and has found it necessary to lay off certain of its employees that are represented by the union. On November 12, 1974, six union members were laid off; on November 27, 1974, approximately 220 additional employees represented by the union were laid off.

The current dispute between Teledyne and the union centers on an interpretation of the provisions of paragraph 46.A.: Teledyne maintains that, by its terms, this clause imposes no limitation on the employer's right to schedule irregular and sporadic overtime work regardless of whether any union members are then on layoff status. The union, on the other hand, takes the position that paragraph 46.A. requires a policy whereby absolutely no overtime hours are to be worked by production personnel when any union members are on layoff status unless the employer makes a specific request in that regard and the union sees fit to authorize the added work time.

The union is currently enforcing its position by refusing to permit any overtime work to be done by those of its members who are engaged in production labor and by imposing penalties upon any of its members who do not refuse requests for overtime work that have not first received union approval.

The foregoing conditions have resulted in a veritable deadlock between the union and Teledyne: Teledyne refuses to take any employees off layoff status, and the union refuses to permit any of its production personnel to accept requests for overtime labor until such time as Teledyne removes some employees from layoff status.

The plaintiff claims that the problems engendered by the union's refusal to permit overtime work for production personnel has caused and will continue to cause it irreparable harm; it brings this action to secure an injunction against the union to foreclose further work stoppage and requests an order to compel the union to enter into arbitration to clarify the nature of the

employer's right, if any, to schedule sporadic overtime labor under the provisions of paragraph 46.A.

■ At the threshold we are met with the crucial question of jurisdiction. Section 4(a) of the Norris-LaGuardia Act, 29 U.S.C. § 104(a), provides:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

"Labor dispute" is defined in § 13(c) of the Act to include "any controversy concerning terms or conditions of employment" and the instant dispute is clearly a labor dispute as defined by the Act.

The District Court could not grant the injunctive relief requested by Teledyne if the anti-injunction provisions of § 4(a) are controlling. To avoid the jurisdictional bar, Teledyne urges that the provisions of § 4(a) are inapplicable in this case and that it qualifies for an exception thereto by virtue of the effect of various recent decisions interpreting that portion of the Act, citing *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and *Avco Corporation v. Local 787 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)*, 459 F.2d 968 (3rd Cir. 1972).

Teledyne contends, and asks this court to hold, that the dispute which caused the "strike" in this case is over a grievance which both parties are contractually bound to arbitrate within the meaning of the *Boys Markets* decision and to remand the proceedings with instructions to the District Court to consider whether or not the remaining requirements of the *Boys Markets* decision are satisfied so as to warrant the relief sought in its com-

plaint.[1] The defendants here contend that the agreement between Teledyne and the union does not contain a "no-strike" clause; that there is no mandatory arbitration provision in the agreement from which a "no-strike" obligation may be inferred and that, therefore, the District Court did not err in denying a *Boys Markets* injunction.

The United States Supreme Court in *Boys Markets, supra,* held that the anti-injunction provisions of the Norris-La-Guardia Act did not prohibit a federal court from enjoining a strike where that strike was in direct violation of an express "no-strike" provision of a collective bargaining agreement then in effect between the parties and where both parties to the suit were contractually bound to enter into binding arbitration as to the grievance or dispute that was the cause of the strike. In *Boys Markets,* there was a limited exception to the prohibition of Norris-LaGuardia:

> Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. 398 U.S. at 253, 90 S.Ct. at 1594, 26 L.Ed.2d at 212.

Relying heavily upon *Boys Markets, supra, Inland Steel Company v. Local Union No. 1545,* 505 F.2d 293 (7th Cir. 1974), and *Avco Corporation v. Auto Workers, Local 787,* 459 F.2d 968 (3rd Cir. 1972), Teledyne contends that the dispute here is within the reach of a *Boys Markets* injunction. We conclude, however, that none of these three cases provides any support for Teledyne. *Boys Markets* involved a broad, express "no-strike" clause and a mandatory arbitration clause; *Inland Steel* involved a mandatory arbitration clause; and *Avco* involved a broad, express "no-strike" clause. Here we have neither an express "no-strike" clause nor a mandatory arbitration clause.

■ Teledyne places great reliance upon the decision in *Avco, supra.* There the agreement was silent upon whether the company could require employees to work overtime. The union had the sole right to initiate arbitration. The union refused to initiate arbitration when the controversy arose, but enforced its resolution prohibiting its members from working overtime until laid-off employees were returned to work by fining any member who performed such overtime work. Unlike *Avco,* the case *sub judice* does not involve a broad, express, "no-strike" clause. The common "no-strike" clause is absent here and Teledyne concedes that "there is not an express no-strike clause in this case which is of general application" (Brief of Appellant at 8). Although Teledyne urges us to interpret paragraph 20E of the agreement as an express "no-partial strike" clause, or, more precisely, as a clause expressly prohibiting the concerted refusal to work overtime, we decline to do so. We agree with the union that paragraph 20E is a provision dealing with the mechanics of scheduling overtime and that paragraphs 20E and 46A, when read together, provide a consistent scheme whereby: (1) when no employee is laid off, Teledyne

---

1. In its complaint, Teledyne asked for the following relief:

"1. That upon a hearing of this cause a preliminary injunction be issued by this Court, restraining and enjoining, until the further order of this Court, the Defendants, and each of them, and their officers, agents, servants, associates, members, employees and all persons acting in concert with them, from:

(a) in any manner calling, formenting [sic], instigating, directing, encouraging, causing, assisting, or participating in any strike, work stoppage, slowdown, or interruption or impeding of work at Plaintiff's Milwaukee plant, during the term of the collective bargaining agreement dated May 4, 1974, over disputes or matters which are grievances under, and subject to the provisions of, paragraphs 9 and 10 of said agreement.

"2. That it be further ordered that Defendants resolve any grievances concerning overtime work by employees in the bargaining unit represented by the Defendant Union in the exclusive manner set forth in paragraphs 9 and 10 of the collective bargaining agreement.

"3. That upon trial of this cause, the preliminary injunction above prayed for be made permanent.

"4. That Plaintiff may have such other and further relief as may be equitable."

may schedule overtime work,—which an individual employee has the option of declining,—but the union may not engage in group refusals of overtime; (2) when employees are laid off, Teledyne must first recall all laid-off employees prior to scheduling overtime work for production employees. We agree that, with full employment, the agreement makes overtime work available to those who want it, without subjecting Teledyne to the danger that a group refusal to work overtime will require new hiring to meet a short-term need; and that with unemployment, laid-off employees are assured that if there is production work available beyond 40 hours per week, they will get it.

Teledyne argues, however, that even if paragraph 20E is held not to be an express "no-strike" clause, this court should, in accordance with *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), and *Inland Steel, supra,* construe the agreement to *imply* a prohibition against a concerted refusal to work overtime on the grounds that Teledyne's dispute with the union is a dispute "over a grievance which both parties are contractually bound to arbitrate" within the meaning of *Boys Markets.*

In the agreement before us, the procedures for arbitration are set forth in paragraphs 9 and 10.[2] They do not, however, contain any provision giving Teledyne the right to initiate arbitration. Paragraph 9, in terms, deals exclusively with employee-instituted complaints. We agree with the District Court that the agreement creates in effect a sole option in favor of the union in regard to the question of when a particular disagreement is to be arbitrated. Furthermore, paragraph 10 states that an unresolved dispute "may" be referred to an arbitrator. The most, then, that can be said in favor of Teledyne's contention is that the agreement contains an employee-oriented, permissive arbitration clause. But Teledyne contends strongly

that just such an employee-oriented, permissive arbitration clause was found by the *Avco* court to be a compulsory arbitration clause. Teledyne, however, seems to be unmindful that the court's finding was tied to the existence of an express "no-strike" clause, which does not exist in the agreement before us. In *Avco* the union-management collective bargaining agreement contained, it is true, an employee-oriented grievance and arbitration procedure by which any unsettled grievance "may be formally referred, in writing, by the Union to the American Arbitration Association for the purpose of arbitrating the unsettled matter".[3] Thus, only the union had the option of invoking arbitration. If the union exercised this option, said the court, both parties to the agreement were then bound to arbitrate. In the following language the court elucidated the rationale:

> . . . the Union is bound to arbitrate the dispute it desires to resolve rather than to resort to a strike. [Citation omitted.] *The "no-strike" clause is the quid pro quo which Avco obtained for agreeing to submit to compulsory arbitration, and the Union agreed to forbear from striking in order to require such arbitration.* [Emphasis added.] 459 F.2d at 972.

Here, however, the agreement does not contain a "no-strike" clause and the union is consequently *not* precluded,—contrary to the situation in *Avco,*—from engaging in a strike, work stoppage, refusal to work overtime, or other type of production shut-down or slow-down. Thus the *"quid pro quo"* present in *Avco* is lacking here and so falls Teledyne's argument that its agreement must be interpreted to imply a compulsory arbitration clause.

In view of the foregoing, we conclude that the agreement before us contains no mandatory arbitration clause,—that the refusal to work overtime was not "over a grievance which both parties are con-

**2.** Because of the length of paragraphs 9 and 10, they are set out in the Appendix to this opinion.

**3.** The terms of the *Avco* grievance and arbitration procedure are set out in 325 F.Supp. 588, 590, n. 1.

tractually bound to arbitrate",—and that neither the decision in *Boys Markets,* nor *Gateway,* nor *Inland Steel,* nor *Avco* is applicable to this case. This is a case controlled by the anti-injunction provisions of § 4(a) of the Norris-LaGuardia Act. Therefore the District Court properly ruled that it was without jurisdiction to grant the injunctive relief requested by Teledyne.

Having held that this case is controlled by § 4 of the Norris-LaGuardia Act, we need not discuss Teledyne's contention that the District Court should have entered an order to the effect that arbitration is the union's exclusive remedy for resolving the dispute.

For all of the foregoing reasons, the order of the District Court dismissing this case is Affirmed.

## APPENDIX

### GRIEVANCE PROCEDURE

9. Should grievances arise between the Company and the Union, the following procedure shall be utilized:

#### STEP 1.

The employee wishing to present a grievance shall first contact his shop Steward and with him present the grievance. The Foreman shall make his verbal disposition no later than three (3) working hours after presentation. Should the grievance be reduced to writing, then the Foreman shall place his disposition as soon as possible but in no event later than twenty-four (24) hours (exclusive of non-working days) after it was presented.

#### STEP 2.

Grievances not resolved in step one shall be submitted by the Chief Steward or Assistant Chief Stewards on all shifts, to General Foreman or Superintendent or Assistant Superintendent for disposition. A Written Disposition shall be made within forty-eight (48) hours.

#### STEP 3.

Grievances not resolved in Step two or Union Policy grievances shall be submitted for discussion to the next meeting of the Grievance Committee and the Labor Relations Representative of the Company. If such grievances are not resolved, they shall be referred to Step Four with a disposition placed thereon.

On Grievances that reach the Third Step, either party in that or subsequent steps may request of the other party that they place into writing their specific position on any particular grievance, listing the provisions of the contract they allege is involved.

#### STEP 4.

Grievances not resolved in Step three shall be submitted to a meeting of the Union Bargaining Committee, Representatives of the Union, and Representatives of the Company. All time spent in such meetings shall be considered Bargaining and any persons necessary at such meetings shall be paid by the Company at A.E.R. Such lost time shall not be charged against normal Union activity time or the allotted lost time pool.

10. A. Should any dispute, differences, or grievances arising because of interpretation of the contract fail to have been concluded in the above steps within ten (10) working days after the reduction to writing in the manner herein and above provided, the matter may be referred to a mutually agreed upon arbitrator, and if the parties cannot agree upon an arbitrator within five (5) work days after written notification of intent to arbitrate is given, the appointment of an arbitrator shall be requested of the Federal Mediation and Conciliation Service, Wisconsin State Industrial Commission, or Wisconsin Employment Relations Board. The Arbitrator shall have no authority to change any provision of this contract and shall have no power to decide any matter, the disposition of which Step 4 occurred more than six (6) months prior to submission to arbitration, provided the Company gives notice of such pending grievances at least thirty (30) calendar days prior to the expiration of the six (6) month period. The fees of the arbitrator and his expenses, if there are such expenses, shall be shared equally by the Company and the Union.

B. The decision of the Arbitrator shall be final and binding on both parties.